*ORAL ARGUMENT NOT YET SCHEDULED*

In The

# United States Court of Appeals

For The District of Columbia Circuit

◆

Nos. 15-7003 & 15-7008

KATHY RADTKE, et al.,

*Plaintiff-Appellants,*

*vs.*

LIFECARE MANAGEMENT PARTNERS, et al.,

*Defendant-Appellees.*

*Appeal from an Order of the*
*United States District Court for the District of Columbia*
*(Hon. John M. Facciola, Magistrate Judge)*

## OPENING BRIEF FOR PLAINTIFF-APPELLANTS
## KATHY RADTKE ET AL.

S. MICAH SALB*
DENNIS CHONG
*Attorneys for Plaintiff-Appellants*
   *Kathy Radtke*
   *Carmen Cunningham*

7979 Old Georgetown Road
Suite 1100
Bethesda, Maryland  20814
(301) 656-6905

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

(A)  **Parties and Amici.**  The Appellants/Cross-Appellees are Kathy Radtke and Carmen Cunningham, the plaintiffs in the case below. Appellees/Cross-Appellants are Advanta Medical Solutions, LLC, and Lifecare Management Partners, who were the defendants below.  Maria Caschetta, one of the defendants below, is not participating in this appeal.

Appellants/Cross-Appellees are currently unaware of any persons or entities interested in participating in this case as *amicus curiae*.

(B)  **Rulings under Review.**  The ruling under review is the December 30, 2014, Opinion of the Honorable John M. Facciola awarding in part and denying in part the Plaintiffs' motion for an award of attorneys' fees.  The Order can be found and JA0030 and memorandum opinion follows at JA0030-48.

(C)  **Related Cases.**  The Defendants filed a prior appeal of this case, Docket No. 14-7079, claiming errors related to the merits of this case. This Court affirmed the trial court's judgment in an opinion delivered on July 28, 2015.  The Defendants have also filed a cross-appeal, apparently raising various claims in favor of further reducing Plaintiffs' fee award.

## TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES. . . . . . . . . . . . . . i

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.      Attorneys' Fees Should be Awarded as a Matter of Course in Wage-and-Hour Cases.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.     The District Court's Award Should Be Reversed Because of Its Analytical Errors of Law and Fact.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        A.      The District Court Is Incorrect in its Finding That the Plaintiffs Had Only Limited Success.. . . . . . . . . . . . . . . . . 14

        B.      Even in Cases in Which a Plaintiff Achieves Only "Limited Success," That Limited Success Cannot Cause a Downward Adjustment of the Fee Award Because Litigation Results Are Presumed to be Subsumed in the Lodestar Calculation.. . . . . . . . 17

        C.      The District Court Erred in Permitting the Disproportionality Between the Fees Incurred and the Value of the Case Affect the Fee Award.. . . . . . . . . . . . . . . . 19

        D.      The District Court Incorrectly Held That the Plaintiffs Failed to Timely Compute and Share with the Defendants the Amount of Their Damages.. . . . . . . . . . . 21

        E.      Even If, *Arguendo*, it Were True That the Plaintiffs

Had Failed to Timely Compute the Amount of
Their Unpaid Wages, the District Court Erred
in Assuming That it Led to a Prolonging of the Litigation.. . . . . . 27

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## TABLE OF AUTHORITIES
*Authorities on which we chiefly rely are marked with asterisks.*

## CASES

Allende v. Unitech Design, 783 F. Supp.2d 509 (S.D.N.Y. 2011). . . . . . . . . . . . . .  19

Anderson v. AB Painting and Sandblasting,
578 F.3d 542 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946). . . . . . . . . . . . . . . . . .  27

*Blanchard v. Bergeron, 489 U.S. 87 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Buljina v. Astrue, 828 F. Supp.2d 109 (D.D.C. 2011). . . . . . . . . . . . . . . . . . . . . . . .  21

*Bywaters v. United States, 670 F.3d 1221 (Fed. Cir. 2012). . . . . . . . . . . . . . . . .  12

Christiansburg Garment Co. v. EEOC, 434 U.S. 412 (1978). . . . . . . . . . . . . . . . .  10

*City of Riverside v. Rivera, 477 U.S. 561 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Cobb v. Miller, 818 F.2d 1227 (5th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

*Copeland v. Marshall, 641 F.2d 880 (D.C. Cir. 1980). . . . . . . . . . . . . . . . . . . . . . .  30

Coutin v. Young & Rubicam Puerto Rico, Inc.,
124 F.3d 331 (1st Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Cunningham v. City of McKeesport, 807 F.2d 49 (3d Cir. 1986). . . . . . . . . . . . .  20

Dowd v. City of Los Angeles, 28 F. Supp.2d 1019 (C.D. Calif. 2014) . . . . . . . . .  15

E.E.O.C. v. Freeman, --- F.Supp.3d ---,
2015 WL 5178420 (D. Md. Sept. 3, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

Fegley v. Higgins, 19 F.3d 1126 (6th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Heder v. City of Two Rivers, 255 F. Supp.2d 947 (W.D. Wis. 2003). . . . . . . . . . .  31

*Hensley v. Eckerhart, 461 U.S. 424 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Johnson v. GDF, Inc., 668 F.3d 927 (7th Cir. 2012). . . . . . . . . . . . . . . . . . . . .  31, 32

Laffey v. Northwest Airlines, Inc., 746 F.2d 4 (D.C. Cir. 1984)................. 9

Lee v. Krystal Co., 918 F. Supp.2d 1261 (S.D. Ala. 2013)...................... 30

Maddrix v. Dize, 153 F.2d 274 (4th Cir. 1946). ............................... 9

Massachusetts v. Microsoft Corp., 373 F.3d 1199 (D.C. Cir. 2004). ........... 5

*Millea v. Metro-North Railroad Co., 658 F.3d 154 (2d Cir. 2011). ...... 20, 21

*National Black Police Ass'n v. DC, 168 F.3d 525 (D.C. Cir. 1999)........ 14, 15

*Newman v. Piggie Park Enterp., 390 U.S. 400 (1968). ...................... 8

*Perdue v. Kenny A. ex rel. Winn, 599 U.S. 542 (2010)........... 10, 11, 18, 19

*Quaratino v. Tiffany & Co., 166 F.3d 422 (2d Cir. 1999). ..................... 9

Roofers Local 307 v. G&M Roofing & Sheet Metal Co.,
732 F.2d 495 (6th Cir. 1984)................................................... 9

Shelby County, Ala. v. Lynch, 799 F.3d 1173 (D.C. Cir. 2015). ............... 15

*Thomas v. National Football League Players Ass'n,
273 F.3d 1124 (D.C. Cir. 2001)...................................... 5, 19, 21

Urnikis-Negro v. Am. Family Prop. Servs., Inc.,
No. 06 C 6014, 2009 WL 212122 (N.D. Ill. Jan. 26, 2009)..................... 9

Ustrak v. Fairman, 851 F.2d 983 (7th Cir. 1988)............................ 20

Wales v. Jack M. Berry, Inc., 192 F. Supp. 2d 1313 (M.D. Fla. 2001). ......... 10

West v. Potter, 717 F.3d 1030 (D.C. Cir. 2013). ............................ 11

Williams v. First Gov't Mortgage & Investors Corp.,
225 F.3d 738 (D.C. Cir. 2000)............................................... 20

Williams v. Roberts, 904 F.2d 634 (11th Cir. 1990)......................... 20

## <u>STATUTES</u>

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

28 U.S.C. § 1927. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

29 U.S.C. § 201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

29 U.S.C. § 207(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

29 U.S.C. § 211(c).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25, 27

29 U.S.C. § 216(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 3, 8

Md. Code, Lab. and Emp. Art., § 3-403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Md. Code, Lab. and Emp. Art., § 3-505. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

## STATEMENT OF JURISDICTION

The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1291.

This is an appeal from a final order that disposes of all of the claims of all parties. The Order that is the subject of this appeal was entered on December 30, 2014; Appellants timely noted their appeal on the same day.

## STATEMENT OF THE ISSUES PRESENTED

The Plaintiffs prevailed in a jury trial in a case brought under the Fair Labor Standards Act and analogous state statutes. The Fair Labor Standard Act provides that a prevailing party in an FLSA claim "shall" be awarded attorneys' fees as part of the recoverable relief. 29 U.S.C. § 216(b). Therefore, the Plaintiffs filed a petition for attorneys' fees.

The District Court, Facciola, M.J., granted in part and denied in part Plaintiffs' petition. Although Plaintiffs had already reduced the amount of their request in view of possible duplication or inefficiency and the like, the court further reduced the award by three-quarters. The court based its decision on three propositions: (1) Plaintiffs' recovery was so low when compared to the amounts that they sought in the litigation that a reduction of the fee award was warranted; (2) Plaintiffs should not receive a fee award which is disproportionately large when compared with the amount of the recovery; and (3) Plaintiffs failed to provide their damages calculations until the end of the litigation, unnecessarily prolonging the litigation by discouraging settlement.

These propositions reflect errors of law and clear error as to the facts. Thus, five issues are presented on appeal:

❖ Whether the District Court erred in holding that the Plaintiffs had achieved only "limited success."

❖ Whether, even if a plaintiff achieves only "limited success," that limited success can affect the fee award when it has not be shown that the limited success was the result of poor lawyering.

❖ Whether the District Court erred in decreasing the fee award based on a lack of proportionality between the verdict and the amount of fees incurred in the case.

❖ Whether the District Court erred in finding that the Plaintiffs had failed to timely compute and share with the Defendants the amount of their unpaid wages.

❖ Whether failing to timely compute damages can permissibly trigger a reduction in the fee award when that failure does not reflect some factor not already subsumed within the lodestar calculation.

## STATEMENT OF THE CASE

Plaintiffs Kathy Radtke and Carmen Cunningham were medical records coders employed by the Defendants. They brought suit seeking compensation for failure to pay overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*; the Maryland Wage and Hour Law, Md. Code, Lab. and Emp. Art., § 3-403 *et seq.*; and the Maryland Wage Payment and Collection Law, Md. Code, Lab. and Emp. Art., § 3-505 *et seq.* The Defendants responded by conceding that they never paid overtime wages but by arguing that the Plaintiffs

were not entitled to overtime pay under the Administrative and Professional exemptions in the FLSA.

The jury disagreed. They returned a verdict finding that the Plaintiffs were not exempt employees and therefore that the Defendants had violated the law by failing to pay overtime wages. The jury did not find that the Defendants had acted "willfully" and did not find that the dispute over the Plaintiffs' entitlement to overtime pay was "not bona fide." Based on these secondary findings, the Court declined to award liquidated damages but entered judgment in Plaintiffs' favor in the amount of their unpaid overtime.

The Plaintiffs then petitioned the District Court for an award of attorneys' fees pursuant to 29 U.S.C. § 216(b). In a detailed pleading, the Plaintiffs explained that they had incurred fees of more than $325,000 but proposed to reduce that amount by about one-quarter to account for "charges that are inadequately documented, arguably duplicative, unduly time-consuming for the task, and the like."

The District Court determined that Plaintiffs' counsel's hourly rates were appropriate and reasonable, that the number of hours spent in the litigation was reasonable for the scope of the litigation, and that the Plaintiffs should be awarded fees at current *Laffey* rates to account for the delay in payment. The court then found that the Plaintiffs had achieved a limited degree of success in their litigation and that Plaintiffs' counsel had been delinquent in promulgating

3

a calculation of damages. As a result, the District Court reduced the Plaintiffs' suggested fee award of $255,898.80 by three-quarters, to $56,474.70.

The District Court's order reflects multiple significant errors. It must be set aside and the case remanded for entry of an order approving the Plaintiff's fee petition in the amount requested, updated to reflect current *Laffey* rates and the time spent on these additional proceedings.

### SUMMARY OF THE ARGUMENT

The trial court dramatically slashed Plaintiffs' fee request based on three principal grounds: (1) that the Plaintiffs had secured only "limited success," as evidenced by their modest recovery as compared to the damages claimed; (2) that it would be inappropriate to grant a large fee award in light of the Plaintiffs' modest recovery; and (3) that the Plaintiffs could have settled this case much earlier had they provided their damages calculations earlier. Each of these reasons presents substantial analytical errors.

First, it is improper to conclude that the Plaintiffs achieved only "limited success," because they pursued — and secured — a judgment vindicating a civil right that Congress deemed important enough to warrant fee-shifting.

Second, the court's fee reduction ignores the principle that the lodestar calculation is presumptively proper and reductions based on the level of the plaintiff's success are improper.

4

Third, there is simply no requirement that the amount of attorneys' fees awarded should be proportionate to the amount of the judgment entered. Such a requirement defeats Congressional intent and causes significant negative consequences in civil rights litigation, where fee-shifting is often the only prospect that makes such cases attractive to private attorneys.

Fourth, the trial court was simply wrong when it found, as a matter of fact, that Plaintiffs had failed to disclose its damages calculations to Defendants prior to the start of trial. There was ample record evidence to dispute that finding, and the court inexplicably ignored it.

Finally, even if the court were correct that Plaintiffs had failed to timely propound damages calculations, the court erred when it reduced the fee award because of its speculation that, had Plaintiffs done so, the case would have settled quickly. The history of this litigation should have easily dispelled this presumption.

## STANDARD OF REVIEW

A district court's fee award is reviewed for abuse of discretion. Thomas v. National Football League Players Ass'n, 273 F.3d 1124, 1128-29 (D.C. Cir. 2001). Any findings of fact which underlie the decision are subject to the "clearly erroneous" standard of review. *Id.* However, legal conclusions are subject to *de novo* review. Massachusetts v. Microsoft Corp., 373 F.3d 1199, 1207 (D.C. Cir. 2004).

5

## ARGUMENT

Kathy Radtke and Carmen Cunningham were employed by Defendants Lifecare Management Partners and Advanta Medical Solutions, LLC, as medical records coders. In November 2006, after learning that they had not been paid overtime wages as they should have been, they filed suit against their former employers under the Fair Labor Standards Act and its Maryland counterparts.

Seven years later, trial was held before Hon. Magistrate Judge John Facciola. The jury found that the Plaintiffs were not exempt employees and therefore that the Defendants had violated the law by failing to pay overtime wages. The jury did not find that the Defendants had acted "willfully" or that the dispute over the Plaintiffs' entitlement to overtime was "not bona fide," and therefore the court declined to award liquidated damages.

From the outset, the Defendants mounted a very aggressive defense. For example, they immediately filed numerous dispositive motions.[1] Later, they leveled a baseless counterclaim.[2] JA0008 [Dkt. No. 26]. After trial, they appealed

---

[1] The Defendants filed a motion to dismiss for lack of jurisdiction, a motion to sever, a motion for more definite statement, a motion to change venue, and a motion to compel arbitration. They later filed an additional motion to dismiss Ms. Cunningham's claims. JA0005 [Dkt. Nos. 2, 3, 4, 5, and 6]; JA0011 [Dkt. No. 54].

[2] The Defendants' counterclaim asserted a violation of a noncompete agreement. It was a specious claim, but the Defendants relied on it to support their demand that the Plaintiffs pay the Defendants (and not vice-versa) in order to settle the case. But they conducted little or no discovery on the counterclaim and ultimately dropped it on the eve of trial. The counterclaim comes close to violating 28 U.S.C. § 1927 (authorizing sanctions for an attorney who "multiplies the proceedings in any case unreasonably and vexatiously").

the jury decision. The amount of money that the Defendants spent to defend this case almost certainly dwarfed the Plaintiffs' initial settlement demands in very short order.

After the trial, the Plaintiffs filed a petition seeking recompense for their legal fees. The Plaintiffs had incurred fees of more than $325,000, but recognizing that there might be charges inadequately documented, arguably duplicative, unduly time-consuming for the task involved, and the like, and aiming to avoid having the fee petition devolve into a second major litigation of its own, the Plaintiffs proposed that the District Court award fees in the amount of about $256,000.

The District Court determined that Plaintiffs' counsel's hourly rates were appropriate and reasonable. The court also determined that the number of hours expended was reasonable for the scope of the litigation. And the court agreed that fees should be awarded at current *Laffey* rates to account for the delay in payment. *See* JA0036-38 ("[B]oth the hourly rate and the number of hours claimed appear reasonable. . . .").

But despite its findings that the amount of time spent and the rate charged were reasonable, the court awarded Plaintiffs only <u>one-quarter</u> of the already-reduced fees that they sought (about 17% of the Plaintiffs' *total* attorneys' fees), giving rise to this appeal. JA0046, 0048.

7

## I. Attorneys' Fees Should be Awarded as a Matter of Course in Wage-and-Hour Cases.

Two basic principles must form the starting point in the analysis of any fee petition.  First, the analysis must recognize that a prevailing plaintiff in a claim brought under the Fair Labor Standards Act is *entitled* to have his or her attorneys' fees and costs paid by the defendant.  Second, the analysis must recognize that the lodestar method is to be used to determine the amount of the fee award, and that lodestar figure is *strongly presumed* to yield a reasonable fee amount, so it can be adjusted only in rare cases.

### A. Prevailing Plaintiffs in Fee-shifting Cases Are to Receive Attorneys' Fees.

The Fair Labor Standards Act (hereinafter the "FLSA") affirmatively requires that courts award fees to prevailing plaintiffs.  29 U.S.C. § 216(b) ("The court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action." (emph. added)).

The fee-shifting provision of the FLSA is integral to the fundamental purpose of the Act for at least three reasons.  First, Plaintiffs in wage-and-hour cases rarely have resources with which to hire an attorney and recoveries in such cases are rarely adequate to fund a contingency fee with which to pay the costs of litigation.  Therefore, fee-shifting makes litigation possible for plaintiffs who otherwise would not be able to afford quality legal representation. Newman

8

v. Piggie Park Enterp., 390 U.S. 400, 401-02 (1968) (limiting fee award to recovery amount would discourage lawyers from taking cases and thus frustrate Congressional intent).

As the Second Circuit explained, "Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation."[3] Quaratino v. Tiffany & Co., 166 F.3d 422, 426 (2d Cir. 1999). Likewise, the Sixth Circuit has held that "[t]he purpose of the FLSA attorney fees provision is to ensure effective access to the judicial process." Fegley v. Higgins, 19 F.3d 1126, 1134-35 (6th Cir. 1994) (quote marks and citation omitted).

Second, by shifting the responsibility for a successful plaintiff's attorneys' fees to the employer, the wronged employee receives his full wages without diminution due to legal fees and costs. Roofers Local 307 v. G&M Roofing & Sheet Metal Co., 732 F.2d 495, 502 (6th Cir. 1984) (citing Maddrix v. Dize, 153 F.2d 274, 275-76 (4th Cir. 1946)).

Third, Congress mandated the award of attorneys' fees and costs to all successful FLSA plaintiffs in order to create an incentive for private litigants to act as "private attorneys general." *Roofers Local 307*, 732 F.2d at 502 (quoting 29 U.S.C. § 207(a)); *see also* Laffey v. Northwest Airlines, Inc., 746 F.2d 4, 11 (D.C.

---

[3] This problem is particularly acute in wage-and-hour cases, in which the measure of damages is almost always minuscule. "Recoveries in individual FLSA suits like this one typically are modest; they involve cases in which a law-flouting employer has, in essence, tried to nickle-and-dime his employee." Urnikis-Negro v. Am. Family Prop. Servs., Inc., No. 06 C 6014, 2009 WL 212122, at *4 (N.D. Ill.).

Cir. 1984). In other words, Congress did not merely intend to empower employees to vindicate their own FLSA rights, but also to create a wave of litigations which would embed the principle of full pay into the weave of society.[4] Because of the essential role that plaintiffs in such cases play in vindicating important societal values, it is important that counsel for prevailing parties "be paid, as is traditional with attorneys compensated by a fee-paying client, for all time reasonably expended on a matter." City of Riverside v. Rivera, 477 U.S. 561, 575 (1986) (cites and quote marks omitted).

Fee-shifting is not optional. The Supreme Court has made it clear that in civil rights litigations, "a prevailing plaintiff should ordinarily recover an attorneys' fee unless special circumstances would render such an award unjust."[5] Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (internal quotes and cites omitted).

**B.    The Calculation of Fees Using the Lodestar Method is Strongly Presumed to Yield a Reasonable Fee Amount.**

Five years ago, the Supreme Court reiterated the triad of principles which have long governed the determination of fees in fee-shifting cases. Perdue v.

---

[4] "It is recognized that the FLSA is an important piece of social legislation. Accordingly, the public derive[s] a benefit from [a plaintiff's] recovery on [her] FLSA claims." Wales v. Jack M. Berry, Inc., 192 F. Supp. 2d 1313, 1327 (M.D. Fla. 2001).

[5] This is especially true in FLSA cases, in which the statute makes a fee award mandatory, unlike whereas civil rights statutes which provide discretion whether to award fees. Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 416 n. 5 (1978).

Kenny A. ex rel. Winn, 599 U.S. 542, 552 (2010).  *Perdue* reaffirmed that the "lodestar method" should be used to calculate the amount of attorneys' fees to be awarded,[6] that the lodestar calculation is "strongly presumed" to yield a reasonable fee,[7] and that the lodestar figure is deemed to take into consideration "most, if not all, of the relevant factors constituting a reasonable attorneys' fee." *Perdue*, 599 U.S. at 552; *see also* West v. Potter, 717 F.3d 1030, 1034 (D.C. Cir. 2013).

Accordingly, an adjustment to the fee award may not be based on a factor that is subsumed in the lodestar calculation.  *Perdue*, 599 U.S. at 552.  For that reason, the quality of an attorneys' performance generally should not cause an adjustment in the lodestar figure because it is already reflected in the reasonable hourly rate.  *Id.*

The Federal Circuit later provided a good summary of the rules related to adjustments to the lodestar figure:

> Although there is a "strong presumption" that the lodestar figure represents a "reasonable" attorney fee, the Supreme Court has recognized a District Court's discretion to adjust the lodestar figure "upward or downward" based upon other considerations. However, adjustments to the lodestar figure are proper only in certain "rare"

---

[6] The virtues of the lodestar method include that it "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results."  *Perdue*, 559 U.S. at 552.

[7] A fee is "reasonable" in the context of fee-shifting law when it is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case.  *Perdue*, 559 U.S. at 552.  Because the lodestar method reflects the multiple factors which determine attorneys' fee rates in a particular community, the lodestar method is seen to accomplish that goal and therefore presumptively yields a "reasonable" fee.  *Id.*

and "exceptional" cases, supported by both "specific evidence" on the record and detailed findings by the lower courts. Adjustments are warranted only where the lodestar figure fails to take into account a relevant consideration. As the Supreme Court recently stated, "an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation."

Bywaters v. United States, 670 F.3d 1221, 1229 (Fed. Cir. 2012) (internal cites omitted).

## II. The District Court's Award Should Be Reversed Because of Its Analytical Errors of Law and Fact.

The District Court determined that Plaintiffs' counsel's hourly rates were appropriate and reasonable. JA0036-38. It held also that the amount of time expended was reasonable for the scope of the litigation. *Id.* Thus, the District Court agrees that the lodestar figure calculated by the Plaintiffs was reasonable and appropriate. That should have been the end of the analysis. Instead, the District Court then held that the Plaintiffs should be awarded only *one-quarter* of the fees that they sought. JA0046, 48.

In striking three-quarters of the fees that the Plaintiffs sought, the District Court came within a hair's breadth of violating the basic requirement that a prevailing plaintiff "shall" recover her fees. It clearly would have been impermissible for the District Court to award *none* of the fees incurred; an award of one-quarter of the fees is barely short of that.

The District Court relied on three reasons in ordering the 75 percent downward adjustment from the lodestar figure:

*First*, the District Court found that a reduction was warranted because the Plaintiffs had achieved only "limited success."

*Second*, the court found that there was a disproportionality between the legal fees incurred in the case and the amounts of the verdicts achieved.

*Third*, the District Court contended that the Plaintiffs were not entitled to a full award of fees because they had prolonged the litigation by failing to timely compute and share with the Defendants the amount of their lost wages.

These three reasons gave rise to five distinct errors:

❖ First, the District Court is wrong in stating that the Plaintiffs had achieved only "limited success."

❖ Second, even if a plaintiff achieves only "limited success," it cannot affect the fee award unless it can be shown that the limited success was the result of poor lawyering.

❖ Third, there is simply no rule of proportionality with respect to wage and hour litigations.

❖ Fourth, the court is wrong in its finding that the Plaintiffs failed to timely compute and share with the Defendants the amount of their unpaid wages.

❖ Fifth, even if, *arguendo*, it were true that the Plaintiffs had failed to timely compute the amount of their unpaid wages, it cannot trigger a reduction in the fee award unless that failure reflects some factor not already subsumed within the lodestar calculation, which is not the case here.

For these reasons, each explained more fully below, the District Court's order must be set aside and this Court should remand the case for entry of an order approving the Plaintiff's fee petition in the amount requested, updated to reflect current *Laffey* rates and the time spent on these additional proceedings.

13

## A. The District Court Is Incorrect in its Finding That the Plaintiffs Had Only Limited Success.

The District Court held that the Plaintiffs had achieved only limited success in the litigation. It reached this conclusion by comparing the jury award with the amount of the Plaintiffs' demands in the Pretrial Statement:

|  | Compensatory Damages Sought | Liquidated Damages[8] Sought |  | Judgment Entered |
|---|---|---|---|---|
| Radtke | $8,698.75 | $26,096.24 | v. | $5,114.62 |
| Cunningham | $13,308.31 | $39,324.92 | v. | $729.67 |

Thus, the court noted, "Radtke recovered a mere 15%, and Cunningham less than 2%, of the damages originally demanded." JA0039.

The court's analysis constitutes an error of law.

The District Court's conclusion of limited success focuses solely on dollar figures. That is incorrect, particularly in civil rights cases. *See* <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 96 (1989) (emphasizing public benefit advanced by civil rights litigation which "cannot be valued solely in monetary terms").

In <u>National Black Police Ass'n v. DC</u>, a citizens' group successfully challenged a referendum which prohibited political contributions of more than $100 for most elected positions in the D.C. government. 168 F.3d 525, 529 (D.C. Cir. 1999). They obtained an injunction against the implementation of the

---

[8] Plaintiffs' demand for liquidated damages derives from provisions in the FLSA and the Maryland Wage Payment and Collection Law, which permit doubling and tripling (respectively) of the amount of the unpaid wages if certain conditions are met. Of course, Plaintiffs did not seek <u>both</u> doubling and tripling of compensatory damages.

referendum, which was extant for 52 days until new legislation made the injunction no longer necessary. The Plaintiffs sought about $700,000 in legal fees, which the D.C. government argued was grossly unreasonable since the candidates had only received about $30,000 in contributions during the period that the injunction was in place. Similar to the way the District Court described the outcome in this case, the D.C. government described the plaintiffs' victory as amounting to $21.46 in legal fees for every dollar given to a candidate during the injunction period.

>   This Court soundly rejected that argument:

>   Both the premises and logic of these arguments are wrongheaded. That the vindicated First Amendment rights of the contributors yielded only a relatively small amount of money in no way reflects the value of those rights to those who exercise them.

*Nat'l Black Police Ass'n*, 168 F.3d at 529.

Likewise, the District Court's focus here on money as a measure of "limited success" is cramped and inconsistent with the purpose of civil rights laws such as the FLSA. *See* Shelby County, Ala. v. Lynch, 799 F.3d 1173, 1186 (D.C. Cir. 2015) (holding that "when prevailing parties . . . help enforce a civil rights statute, they are entitled to fees"); Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 340 (1st Cir. 1997) (noting that plaintiff prevailed even if the compensation awarded was lower than sought); Dowd v. City of Los Angeles, 28 F. Supp.2d 1019, 1062 (C.D. Calif. 2014) ("it is improper to reduce a plaintiff's fee award based solely on a comparison between the damages awarded and damages sought in a case").

This case was not about money. This was clear from the very outset of the litigation, when the Plaintiffs were prepared to settle the case for $25,000 against a potential recovery which they then calculated as greater than $52,000.[9] JA0118 (demand letter dated December 28, 2006). The Plaintiffs have always been clear that this was not some effort to "strike it rich" by hitting the litigation lottery. Their actions have always been geared primarily toward vindicating their basic right to full compensation for their labor.

The Defendants' actions demonstrate that this case was not about money for them, either. It would have been far cheaper for the Defendants to have settled this case long before it went to trial. The amount of money that they undoubtedly spent on their own attorneys' fees (nevermind any consideration of fee-shifting) far exceeds even the greatest recovery that Plaintiffs could ever have achieved. The amounts the Defendants spent in the litigation of this case — including their decision to appeal the $6,000 judgment — demonstrate that this case was for them a matter of pride, not money.

The Plaintiffs obtained the results that they desired. They gained a judicial declaration that the Defendants had wrongfully denied them the pay that they had earned. That the amount of money they recovered was modest is secondary to the victory that they achieved.

_____

[9] This settlement would have yielded to the Plaintiffs (after payment of fees and costs) less than the amount of the overtime wages to which they were entitled. The Plaintiffs had at that time computed the amount of their lost wages as $23,500 and legal fees incurred by that time were $6,600.

The District Court's focus on money as the measure of success is error and reflects a myopic view of the purpose of civil rights and fair wage litigation. Correctly understanding the societal values and Congressional intent underlying the FLSA, the Plaintiffs were successful in this case.

**B.     Even in Cases in Which a Plaintiff Achieves Only "Limited Success," That Limited Success Cannot Cause a Downward Adjustment of the Fee Award Because Litigation Results Are Presumed to be Subsumed in the Lodestar Calculation.**

The District Court erred in its finding that the Plaintiffs had achieved only limited success in this litigation.  See Part A, above.  But even if, *arguendo*, that finding were correct, it is not a valid basis on which to reduce the lodestar figure.

No lawyer with even a modicum of trial experience believes that the outcome in any case can ever accurately be predicted.  Too many factors outside of the lawyer's control affect the outcome of a case.   The Supreme Court recognized the impact of this in fee awards:

> When a plaintiff's attorney achieves results that are more favorable than would have been predicted based on the governing law and the available evidence, the outcome may be attributable to superior performance and commitment of resources by plaintiff's counsel. Or the outcome may result from inferior performance by defense counsel, unanticipated defense concessions, unexpectedly favorable rulings by the court, an unexpectedly sympathetic jury, or simple luck.[10]

---

[10] Although *Perdue* raised this issue in the context of fee enhancements, there is no principled reason that its reasoning should not apply to downward adjustments as well.

*Perdue*, 559 U.S. at 554 (internal cite omitted).  The reasons for the amount of a verdict are as varied as the number of juries making decisions.

Because of this, the Supreme Court ruled unanimously[11] that <u>the outcome of a case does not, *ipso facto*, affect the amount of the fee award</u>:

> In this case, we are asked to decide whether either the quality of an attorneys' performance or the results obtained are factors that may properly provide a basis for an enhancement.  * * *  [S]uperior results are relevant only to the extent it can be shown that they are the result of superior attorney performance . . . [and only when] there are circumstances in which superior attorney performance is not adequately taken into account in the lodestar calculation.

*Perdue*, 559 U.S. at 554.  Thus, in the ordinary case, the outcome of the litigation is encompassed within the lodestar figure and should not cause further adjustment to the lodestar figure.[12]

When a litigation yields a poor result, a downward adjustment of the lodestar figure may be appropriate only if the trial court finds that the poor result was the consequence of poor lawyering. *Perdue*, 559 U.S. at 554.  Here, the District Court held that the Plaintiffs' limited success warranted a downward adjustment of the fees.  JA0048 (rejecting the idea that a lodestar figure should

---

[11] Justice Breyer concurred with the majority as to the rule of the case; his dissent related only to whether the trial court had incorrectly determined that a lodestar enhancement was warranted.  *Perdue*, 559 U.S. at 562.

[12]  The Court allowed that there were three scenarios in which an adjustment from the lodestar figure might be appropriate:  cases in which (i) the lodestar figure does not adequately measure the attorneys' true market value, (ii) the attorney has had to make an extraordinary outlay of expenses in a highly protracted litigation, and (iii) there is an exceptional delay in the payment of fees. *Perdue*, 559 U.S. at 554-56.  It would appear that these three scenarios are in addition to the scenario in which the results obtained reflect truly exceptional or deficient attorney performance.  None of these scenarios are present here.

be used "no matter how much it exceeds what the lawyer accomplished"). But it neither suggested nor demonstrated that poor attorney performance played a role in depressing the amount of the verdict or that the lodestar figure was not a fair reflection of the quality of lawyering (and nothing in the record would support such a finding). Therefore, the District Court violated *Perdue* in finding that limited success in the case warranted a reduction in the fee award.

### C.   The District Court Erred in Permitting the Disproportionality Between the Fees Incurred and the Value of the Case Affect the Fee Award.

The District Court clearly believed that this case simply is not "worth" $260,000 of attorney time; that theme dominates the language throughout the decision. *See, e.g.*, JA0041(noting the "incongruity of the plaintiffs demanding a quarter of a million dollars in fees in a case where one of them recovered less than $6,000 and the other less than $1,000"); JA0044 (characterizing award of "over a quarter million dollars" over six years for a $6,000 verdict as "unconscionable").

This analysis is dangerous, it is wrong, and it must be rejected.

It is firmly established that a court cannot consider the amount of a verdict or the relationship between that amount and the amount of the fees incurred when it decides a fee award in a civil rights case.[13] Thomas v. National Football

---

[13] Wage-and-hour cases are considered one and the same as civil rights cases. *See* Allende v. Unitech Design, 783 F.Supp.2d 509, 511 (S.D.N.Y. 2011) (equating "FLSA cases" with "discrimination or civil rights cases").

League Players Association, 273 F.3d 1124, 1129 (D.C. Cir. 2001). To the contrary, when the legislature has enacted a fee-shifting provision, an analysis of whether the case was "worth it" is improper as a matter of law:

> [Whether a fee award is reasonable] has nothing to do with whether the District Court thinks a small claim was "worth" pursuing at great cost. Fee-shifting statutes remove this normative decision from the court. *If a party prevails, and the damages are not nominal, then Congress has already determined that the claim was worth bringing.*

Anderson v. AB Painting and Sandblasting, 578 F.3d 542, 546 (7th Cir. 2009) (emph. added); *see* Williams v. First Gov't Mortgage & Investors Corp., 225 F.3d 738, 747 (D.C. Cir. 2000) (rejecting proportionality rule in consumer protection case); Cunningham v. City of McKeesport, 807 F.2d 49, 51 (3d Cir. 1986) (singular nature of relief does not justify negative multiplier); Cobb v. Miller, 818 F.2d 1227, 1234-35 (5th Cir. 1987); Williams v. Roberts, 904 F.2d 634, 640 (11th Cir. 1990). As the Seventh Circuit held, "There is an irreducible fixed cost to litigation. If the plaintiff cannot recover that cost in an award of attorney's fees, he will find it difficult to hire a lawyer." Ustrak v. Fairman, 851 F.2d 983, 989 (7th Cir. 1988).

In Millea v. Metro-North Railroad Co., for example, the court held that it was error to view a low recovery in an FMLA case as justifying a fee reduction. 658 F.3d 154, 168-69 (2d Cir. 2011). The court recognized that FMLA claims "are often small-ticket items," and "if an expense of time is required to obtain an award that is not available by voluntary compliance or offer of settlement, the expense advances the purposes of the statute." *Id.* at 168. Therefore, to link the

amount of a fee award to the amount of the recovery, especially for small-value claims, "runs directly contrary to the purpose of fee-shifting statutes:  assuring that civil rights claims of modest cash value can attract competent counsel." *Id.* Indeed, the court explicitly held that "the whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery."[14] *Id.*  The same is, of course, equally true in wage-and-hour cases.

Thus, the District Court's reduction of the fee award because of the small value of the case violated a fundamental principle of the law of fee awards, runs afoul of this Court's decision in <u>Thomas v. National Football League Players Ass'n</u>, and must be reversed as an error of law.

### D.    The District Court Incorrectly Held That the Plaintiffs Failed to Timely Compute and Share with the Defendants the Amount of Their Damages.

The District Court castigated the Plaintiffs for purportedly failing to provide a competent calculation of damages "until the bitter end of suit," thereby preventing the case from settling early.  JA0041-42.  So significant was this purported failure in the eyes of the District Court that the court stated explicitly, "it is plaintiffs' counsel's inability to provide a meaningful demand for actual damages suffered that is driving me to reduce the fee."  JA0040.  The court explained, "[a] failure to come to grips truly with the actual damages at issue

---

[14] By adding to the potential cost to employers violating the law, fee-shifting statutes encourage compliance with the law. *See, e.g.*, <u>Buljina v. Astrue</u>, 828 F.Supp.2d 109, 112 (D.D.C. 2011).

should not be condoned, let alone rewarded by the kind of fees plaintiffs seek here." JA0041-42.

**_But the District Court was flat out wrong._** The Plaintiffs had provided the Defendants with calculations of their damages many times throughout this litigation. To wit:

On November 2, 2006, even before filing suit, Plaintiffs' counsel wrote to the Defendants' attorney offering to discuss "amicable resolution" of the Plaintiffs' claims before anyone incurred substantial litigation expense.[15]  As Plaintiffs' counsel wrote,

> We hope to resolve this case now because our clients' financial investments in the case remain moderate and because a speedy resolution will prevent the expense of litigation. . . .

JA108.  As of that date, Ms. Radtke assessed her damages at about $4,700 and Ms. Cunningham assessed hers at about $18,000; Plaintiffs noted the double or treble liquidated damages available under the relevant statutory provisions; and they disclosed attorneys' fees at approximately $5,400.  *Id.*

This letter went unanswered.

The Defendants then retained Mr. Lescht's firm to represent them.  Upon learning of Mr. Lescht's involvement, Plaintiffs' counsel again reached out in an effort to settle, making a specific demand of $30,000.  JA0117.  Plaintiffs specifically noted that "it seems plain to us that your client will spend far more defending this case than the current settlement demand."  *Id*.  They also

---

[15] The letter's reference to the Complaint having been filed is incorrect; the Complaint was not filed until nearly a month later.

cautioned that "litigation will rapidly increase Plaintiffs' attorneys' fees, so that the cost of settlement will consistently increase." *Id.*

This letter, too, went unanswered.

A month later, Plaintiffs' counsel wrote yet a third time regarding the Plaintiffs' willingness to settle the case. JA0118. Plaintiffs again explained what they believed they could reasonably expect to recover as lost wages, what could reasonably be assessed as liquidated damages, and the amount of attorneys' fees incurred to date — all of which combined to more than $50,000. *Id*. *Bidding against themselves at this point*, the Plaintiffs stated that they would accept a total of $25,000 to settle this case — less than half of what they reasonably expected to recover at that point. *Id.*

This offer, like the prior two, went unanswered.

***Thus, from the outset of this litigation, the Defendants have known the amount of the Plaintiffs' claim — and made clear their lack of interest in settlement.***

The Plaintiffs more formally informed the Defendants of the amount of their losses during the course of the litigation. As the District Court noted, Rule 26(a)(1) requires plaintiffs to disclose their damages calculations even before a discovery request is propounded to that effect. JA0041. The court appeared to presume that the Plaintiffs did not satisfy their Rule 26 duty, but in fact the Plaintiffs timely served their Rule 26 disclosures in November 2007, specifically

identifying the amount of unpaid overtime wages to which they were due and the basis for that claim.  JA0280-84.

At the end of 2007, the Parties met with Judge Facciola for a settlement conference.  JA0007 [Dkt. entry dated Dec. 14, 2007].  The Plaintiffs shared their calculation of damages with the Defendants at that settlement conference.  (The Defendants responded by stating that they would make no payment to settle the case and that settlement could occur only if the Plaintiffs paid money to the Defendants.)

Next, in May 2008, the Plaintiffs timely provided to the Defendants a pair of reports prepared by the Plaintiffs' retained expert, Dr. Richard Lurito. Dr. Lurito determined that Ms. Cunningham had been underpaid for 484.9 hours of overtime work and suffered a loss in the amount of $9,666.  JA0319.  He also determined that Ms. Radtke had suffered a loss of between $5,621 and $10,414. JA0320-322.  While the Defendants sought and received an extension of time to file a rebuttal expert report, they never actually named an expert. *See* JA0007-08 [Dkt. 31, 32].  Nor did the Defendants challenge Dr. Lurito's reports.

Late in 2008, the Plaintiffs provided a detailed, week-by-week listing of all of the time for which they claimed they had not been fully paid, along with a calculation of the damages based on that unpaid time.  JA0286-316.  In those documents, Ms. Cunningham sought overtime pay of $11,057 and Ms. Radtke sought overtime pay of $5,142.67 (both after interest) plus reimbursement for

24

some work travel expenses of $1,386.[16]   The Plaintiffs also identified their attorneys' fees incurred to date, which were at that time about $72,000, and liquidated damages.

In March 2009, the Parties again engaged in settlement talks with Magistrate Judge Facciola. *See* JA0012 [Dkt. entry dated March 18, 2009].  The Plaintiffs again brought a calculations of their damages to the settlement conference to share with the Defendants.

And, of course, in advance of trial the Plaintiffs provided their damages calculations to the court and the Defendants as part of the Plaintiffs' Pretrial Statement.[17]  JA0325-380.

Thus, the driving force behind the District Court's drastic reduction in the fee award was the court's clearly incorrect assumption.  The District Court's finding that plaintiffs' counsel were unable to provide a meaningful demand for actual damages suffered was clearly erroneous.

---

[16] These numbers were not identical to but were consistent with Dr. Lurito's calculations.

[17] At the Pretrial Conference, the Defendants voiced objections to the Plaintiffs' damages calculations. The court could have determined the amount of damages by looking at the Parties' competing calculations, or the court could have rejected the Defendants' objections as untimely, since it is the Defendants' duty in a wage-and-hour case to maintain appropriate time records and to present specific objections to a plaintiff's calculation of losses. *See* 29 U.S.C. § 211(c) (imposing requirement that employers maintain accurate time records). Instead, the court directed the Parties to produce an agreed-upon damages calculation.  *See* JA0021 [Dkt. entry dated Jan. 6, 2014].  This exercise was, of course, difficult to do during the course of the jury trial.  That difficulty may have created a false impression with the court regarding the Plaintiffs' preparation of earlier damages calculations.

It is worth noting there were numerous reasons why the District Court *should have known* that it was reaching an erroneous conclusion:  (i) the Plaintiffs had provided the court with copies of their settlement demand letters attached to their fee petition; (ii) the record in the case included the Plaintiffs' damages calculations provided during the pretrial proceedings, the Plaintiffs' Rule 26(b) statement,[18] and even some damages calculations prepared in 2008; (iii) the record demonstrated that the Plaintiffs had employed an expert to calculate damages; and (iv) the judge had twice attempted to mediate this dispute.  The judge clearly had ample information from which he should have known that the Plaintiffs had shared their computations of damages with the Defendants well before 2010 (and thus long before "the eve of trial").

The District Court's findings that the Plaintiffs had failed to share their loss calculations with the Defendants in a timely fashion are highly problematic for the additional reason that the court made these findings without giving the Plaintiffs an opportunity to address them.  The court convened no hearing and sought no supplemental briefing on whether Plaintiffs' counsel had provided a damages calculation before the eve of trial or whether the Plaintiffs had hindered settlement efforts.  It made this finding of fact without the input of counsel.  Had the court requested such information, Plaintiffs would have pointed the court to the evidence set forth here.

---

[18] The Rule 26(b) statement is not filed with the court but it is required of the plaintiff and there was nothing in the record that would have suggested that it was not done.

26

Finally, the District Court's finding of fault with the Plaintiffs is misplaced for two reasons.  First, if the court were correct in finding that the Plaintiffs had in fact failed to share their damages calculations with the Defendants, the Defendants could have sought summary judgment on the grounds that the Plaintiffs had not demonstrated damages.  They did not do so.  Second, after the Plaintiffs provided their damages calculation to the Defendants — as they did early in the litigation — it became the Defendants' duty (and choice whether) to challenge them or offer a competing calculation.  After all, disproving the Plaintiffs' calculations was the Defendants' burden to meet.[19]  Thus, the District Court injected an issue in the case where none existed.

Therefore, the District Court's finding that the Plaintiffs were derelict in their duty to present their damages calculations to the Defendants is a clear error of fact.  The court's reliance on this finding resulted in reversible error.

### E.     Even If, *Arguendo*, it Were True That the Plaintiffs Had Failed to Timely Compute the Amount of Their Unpaid Wages, the District Court Erred in Assuming That it Led to a Prolonging of the Litigation.

The District Court decided to slash three-quarters of the Plaintiff's attorneys' fees because of the court's assumption that the Plaintiffs' purported

---

[19] When a plaintiff in a wage-and-hour case proffers a competent demand for damages, the burden shifts to the defendant to produce records tending to rebut the damages claim. *See* Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946).  Indeed, it is the employer's duty under the FLSA to maintain such records.  29 U.S.C. § 211(c).  The Defendants in this case did not engage in the effort necessary to rebut Plaintiffs' damages calculations.

failure to provide a competent calculation of damages until the end of the suit resulted in an unnecessary prolonging of the litigation. JA0041-42. The court wrote, "in my view, a realistic evaluation of the value of this case at its inception would have spared the litigants and the Court so much money and time*."* JA0044.

The District Court's finding that this case could have settled if only the Defendants had known the amount of the Plaintiffs' demand is utterly baseless.

The Defendants never built their defense on the contention that the Plaintiffs' damages calculations were wrong. Instead, they consistently maintained the position — and argued to the jury and to this Court — that the Plaintiffs *were not entitled to overtime pay at all*. Whether the Plaintiffs provided a damages calculation early in the case is irrelevant because the Defendants were never focused on the amount at stake.

If it were true, as the District Court assumed, that an earlier understanding of the amount of the Plaintiffs' losses would have yielded an early resolution, then the Defendants would not have ignored the Plaintiffs' repeated early efforts to settle. With full knowledge of the amount of Plaintiffs' demands, the Defendants declined to even discuss settlement. Instead, they chose to incur fees for the preparation of dispositive motions that almost certainly far exceeded those early settlement demands.

Not only did the Defendants refuse to settle this matter, they instead asserted a counterclaim, asserting that the Plaintiffs had violated a noncompete

28

agreement, which appears to have been pursued solely for strategic litigation advantage. It was a specious claim, but it permeated the discussions surrounding this case. For example, the Defendants relied on their counterclaim to propose that *Plaintiffs* pay *Defendants* in settlement of all claims. JA0084. But they conducted little or no discovery on the counterclaim and ultimately dropped it on the eve of trial.

The Defendants demonstrated consistently throughout the litigation that they were willing to invest greatly in their zealous defense:

- ❖ After they were served, the Defendants filed five preliminary motions (Dkt. Nos. 2, 3, 4, 5, and 6).

- ❖ The Defendants opposed the Plaintiffs' motion for leave to file an Amended Complaint and, when their opposition was unsuccessful, they sought reconsideration. (Dkt. 47, 51).

- ❖ They filed an additional motion to dismiss after the Plaintiffs filed their Amended Complaint (Dkt. No. 54).

- ❖ The Defendants filed a baseless counterclaim, apparently for leverage during settlement talks.

- ❖ The Defendants improperly sought to argue to the jury that Ms. Cunningham had committed perjury. (Dkt. No. 105).[20]

- ❖ Even the timeliness of the fee petition generated significant litigation efforts. *See* Dkt. Nos. 168 (motion to strike fee petition, denied by minute entry on March 7, 2014), 170 (motion to reconsider, denied by minute entry on March 10, 2014), 174 (motion to again reconsider same order).

---

[20] Defendants clung tenaciously to this argument, including it in their post-trial motions urging judgment notwithstanding the verdict and yet again in their merits appeal of this case.

Six pre-Answer motions do not come cheap. Neither does appellate litigation. That the Defendants chose to appeal this case on its merits — incurring attorneys' fees and costs just to resist paying a judgment of $5,844.29 plus interest — adds to the evidence demonstrating that the court misplaced its faith in assuming that but for uncertainty over the amount at stake, this case would have settled earlier. Clearly, the Defendants' decision to refuse settlement was not based on a lack of information about the amount at stake.

In Copeland v. Marshall, this Court recognized that a defendant's decision to litigate aggressively is not improper, but it cannot lead to a reduction in the fee award:

> The litigation went forward in a relatively civilized manner but it was hard fought. The Government offered firm, persistent resistance throughout the litigation. . . . Indeed, the Government moved to dismiss at the outset, and it opposed discovery. There were many difficulties encountered during the discovery process. . . .
>
> The government's contentious litigation strategy forced the plaintiff to respond in kind. The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.

641 F.2d 880, 904 (D.C. Cir. 1980). This applies with similar force to the Defendants' litigation strategy in this case. The Defendants' aggressive litigation naturally imposed costs on the Plaintiffs — costs which ultimately must be borne by the Defendants.[21]

---

[21] Courts have (appropriately) held defendants accountable for their role in driving up fees. *See, e.g.*, Lee v. Krystal Co., 918 F. Supp.2d 1261, 1274 (S.D. Ala. 2013) (attributing disproportionality between recovery and lodestar fee to "war of attrition" waged by defendant; thus, imbalance was "largely a function (continued...)

The Seventh Circuit addressed a similar situation in Johnson v. GDF, Inc. Following the plaintiff's success in an FLSA case, the trial court allowed compensation of only three hours for the plaintiff's lawyer's 180-hour fee petition. 668 F.3d 927, 930-31 (7th Cir. 2012). The magistrate judge reasoned that a significant reduction was warranted because, "the case would have settled quickly . . . if [plaintiff's lawyer] had been honest about his client's damages." *Id.* at 931. The trial court held that the case would have settled within three hours had plaintiff's counsel simply been forthright from the get-go, and three hours was all the compensation the attorney deserved. *Id.*

The Seventh Circuit reversed. It rejected the employer's argument that increased candor would have promoted settlement efforts. The defendant, "charged with having some common sense," should have realized the maximum extent of back pay liability early in the litigation. *Id.* Armed with this knowledge, the fact that it did not settle the case suggested its general disinclination to do so. Equally important was the nature of the employer's defense. The Seventh Circuit described the issue in the case:

> This was not a dispute about the *amount* of back pay and liquidated damages [plaintiff] was entitled to, it was about whether [plaintiff] was fired *at all*. [Defendant] flatly denied it.

---

[21](...continued)
of defendant's own litigation practices"); Heder v. City of Two Rivers, 255 F. Supp.2d 947, 956 (W.D. Wis. 2003) (comparatively large fee award appropriate because defendant "has only itself to blame" for heightened fees, where defendant refused settlement overtures and litigated every issue).

31

*Id.* (emph. in orig.).  Notably, the Seventh Circuit observed that "even after [defendant] lost at trial, it continued its fight with a post-verdict motion for judgment as a matter of law and an appeal." *Id.*

This case is remarkably similar to *Johnson*.  An employer which chooses to mount an aggressive defense; which chooses to take an all-or-nothing strategy of claiming entitlement to an FLSA exemption; and which chooses to invest substantial sums in litigation rather than attempting settlement, cannot be heard to complain about the burden of paying the plaintiffs' attorneys' fees.

> World-renowned poker expert Kenny Rogers once sagely advised, "You've got to know when to hold 'em.  Know when to fold 'em. Know when to walk away."  In the Title VII context, the [defendant] who wishes to avoid paying a [plaintiff's] attorneys' fees must [know when to] fold 'em. . . .

E.E.O.C. v. Freeman, – – – F.Supp.3d – – –, 2015 WL 5178420, at *1 (D. Md. Sept. 3, 2015).

The District Court failed to discuss *at all* the Defendants' role in the escalation of efforts (and therefore attorneys' fees) in this case, instead lamenting that the Defendants were deprived of the protections of Rule 1 of the Federal Rules.  JA0044.  The District Court (apparently rhetorically) pondered, "[w]ho would *not* have settled this case for more than the jury awarded plaintiffs rather than pay fees of more than a quarter of a million dollars?" *Id.*  The apparent answer to that question is "*these* Defendants."  Everything about their litigation posture, including the fees the paid to their attorneys to continue to fight this case, telegraph a refusal to settle at any cost. This is a decision they are

entitled to make, but they cannot avoid the unavoidable consequence of that decision.

The District Court erred in assuming that the Plaintiffs deprived the Defendants of information they required to be able to choose between exploring settlement and erecting an expensive defense. That was clear error. The Defendants had the necessary information at all times; it is clear that they made a deliberate decision not to use it, and instead, like Don Quixote's less admirable brother, to seek the declaration that they were right. They did not get that declaration, and now they must pay the cost of their effort.

## CONCLUSION

The trial court committed reversible error in striking three-quarters of the fees that the Plaintiffs' attorneys earned. The court's focus on the wrong factors (and ignoring of relevant analysis) caused it to reach findings unsupported by the record and incorrect factual conclusions. This Court should vacate the District Court's decision and direct the Court to enter an award consistent with Plaintiffs' Petition as adjusted to reflect current *Laffey* rates and the additional litigation activity that has followed.

Respectfully submitted,

October 20, 2015                          /s/ S. Micah Salb
                                         S. Micah Salb, Esq.
                                         Dennis Chong, Esq.
                                         LIPPMAN, SEMSKER & SALB, LLC
                                         7979 Old Georgetown Road
                                         Suite 1100
                                         Bethesda, Maryland 20814
                                         (301) 656-6905

                                         *Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

In accordance with Rule 25(a)(2)(D) of the Federal Rules of Appellate Procedure and Local Rule 25(a) of the United States Court of Appeals for the District of Columbia Circuit, I hereby certify that on this the 20th day of October, 2015, I filed the required copies of the Brief for Plaintiff-Appellees with the Office of the Clerk of this Court via the Court's Case Management/Electronic Case Files system and I have dispatched for printing and delivery via first-class United States postage pre-paid the required copies of the Brief for Plaintiff-Appellees to the Defendants and to the Clerk of the Court.


October 20, 2015                          /s/ S. Micah Salb
                                          S. Micah Salb, Esq.


## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(B)

I hereby certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) that a brief contain less than 14,000 words; inasmuch as it contains approximately 9,185 [-541 uncounted] words.

This brief complies with the typeface requirements of Fed. R. App. p. 32(a)(5) and the type style requirements of Fed. R. App. p. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using WordPerfect in Cambria 14 point type.


October 20, 2015                          /s/ S. Micah Salb
                                          S. Micah Salb, Esq.